UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASMYN BICKHAM AMANDA BAILEY and LISA GORDON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

REPROSOURCE FERTILITY DIAGNOSTICS, INC.

Defendant.

Case No. 1:21-cv-11879-GAO

**MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD**

**I. INTRODUCTION** .......... **1**

**II. FACTUAL AND PROCEDURAL BACKGROUND** .......... **2**

**a. Nature of the Case** .......... **3**

**b. Class Counsel Performed High-Quality Work for the Benefit of the Class** .......... **3**

**c. The Terms of the Settlement** .......... **5**

**d. Class Counsel's Fee Request** .......... **6**

**III. CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND** .......... **6**

**IV. FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE** .......... **8**

**a. The Size of the Fund and the Number of Persons Benefitted** .......... **9**

**b. The Skill, Experience, and Efficiency of the Attorneys Involved** .......... **10**

**c. The Complexity and Duration of the Litigation** .......... **10**

**d. The Risks of the Litigation** .......... **11**

**e. The Amount of Time Devoted to the Case by Counsel** .......... **12**

**f. Awards in Similar Cases** .......... **14**

**g. Public Policy Considerations** .......... **14**

**h. The Reaction of the Class** .......... **15**

**i. The Lodestar Cross-Check Supports the Reasonableness of The Requested Fee** .......... **15**

**V. CLASS COUNSEL SHOULD BE REIMBURSED FOR REASONABLE LITIGATION EXPENSES** .......... **17**

**VI. THE PROPOSED SERVICE AWARD WAS APPROVED** .......... **17**

**VII. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.................18**

**VIII. CONCLUSION ........................................................................................................18**

Plaintiffs Jasmyn Bickham, Amanda Bailey, and Lisa Gordon ("Plaintiffs"), having achieved a settlement of $1,250,000.00 in cash for the benefit of the Settlement Class,[1] respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 33⅓ of the Settlement Fund, or $416,666.67. Plaintiffs also seek reimbursement of $16,229.31 in litigation expenses that were reasonably and necessarily incurred by Class Counsel in prosecuting and resolving the Action. Finally, Plaintiffs request a service award to the named Plaintiffs of $2,500 each for their service to the Settlement Class as Class Representatives.

## I. INTRODUCTION

Following litigation, including briefing on a motion to dismiss and mediation before a respected and experienced mediator, Class Counsel negotiated and achieved a favorable nationwide class action settlement ("Settlement") against Defendant ReproSource Fertility Diagnostics, Inc. ("Defendant" or "ReproSource"), which provides Settlement Class members with comprehensive relief. The Settlement Agreement creates a non-reversionary settlement fund of $1.25 million and provides several forms of relief from which Settlement Class members can select, to be paid out of the Settlement Fund. In addition, the Settlement Agreement incorporates as part of the Settlement, remedial measures adopted by ReproSource to enhance its data security.

The fee award, expense reimbursement, and service awards sought here are well supported, as the Settlement was reached after investigation, the initiation of litigation, full briefing on a motion to dismiss, the production of numerous, significant documents, intensive

[1] Defined as: "all natural persons whose Personal Information was compromised in the Security Incident and to whom ReproSource sent written notice of the Security Incident in or around October 2021. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) ReproSource, its subsidiaries, parent companies, successors, predecessors, and any entity in which ReproSource or its parents have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person." Settlement Agreement ("S.A.") §1.44.

negotiations between the Parties, including one full-day mediation session with a respected and experienced mediator, and numerous additional communications (with further assistance from the mediator), including substantial, prolonged settlement negotiations via telephone and email.

On February 15, 2024, this Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Providing Notice ("Preliminary Approval Order"), finding that "the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate, such that it is hereby preliminarily approved and notice of the Settlement should be provided to the Settlement Class members[.]" [ECF. No. 71, ¶ 3]. The requested fee award and proposed incentive awards were disclosed in the Court-approved Notice provided to Settlement Class members by direct mail, to each Class Member for whom a mailing address is available. [Dkt. No. 64-1, ¶ 6.3]. In addition, notice was posted on the Settlement website. *Id*. To date, 6,189 claims have been submitted,[2] but no Settlement Class member has objected to any aspect of the Settlement, including the requested attorneys' fees, which is indicative of the success and substantial benefits of the Settlement.

The requested fee is fair and reasonable under the law in this Circuit governing fee awards. Given the course of this litigation, the terms of the Settlement achieved, and the risk taken, Class Counsel have earned the fee requested in this case. The requested percentage is within the range of fee awards in this and other Circuits, and all of the factors that courts use to assess the reasonableness of a fee award demonstrate that the requested fee is indeed fair and should be approved.

## II. FACTUAL AND PROCEDURAL BACKGROUND

[2] As of May 6, 2024. The claim submission deadline is May 20, 2024.

Class Counsel have been committed to pursuing this litigation on behalf of the Settlement Class. Class Counsel's litigation efforts are detailed in the Declaration of Nicholas A. Migliaccio ("Migliaccio Decl."), submitted herewith, and are briefly described below.

**a. Nature of the Case**

This case arises from a data breach experienced by ReproSource on or about August 8, 2021, involving the potential unauthorized access of Personally Identifiable Information ("PII") of certain individuals (the "Data Breach"). On or about August 10, 2021, ReproSource discovered that the Data Breach resulted in the potential unauthorized access of the PII of 228,214 persons. *See, e.g.*, First Amended Class Action Complaint ("Complaint"), ¶ 28-29. [ECF. No. 11].

ReproSource is a Massachusetts corporation with its principal place of business in Woburn, Massachusetts. Complaint, ¶ 23. Plaintiffs allege that ReproSource's computer network was subject to a cybersecurity attack from August 8-10, 2021. *Id.*, ¶ 28. The Data Breach involved roughly 228,214 patients, *Id.*, ¶¶ 3, 29, 34, and allegedly resulted in the release of Settlement Class members' sensitive PII including, but not limited to: Social Security numbers ("SSNs"), first and last names, email addresses, dates of birth, health insurance billing information, and sensitive treatment information. *Id.*, ¶ 1, 34-35.

Plaintiffs allege that their PII was compromised due to ReproSource's negligent acts and omissions and failure to protect the sensitive personal data of the Settlement Class. Complaint, *e.g.*, ¶¶ 49, 90-91, 120, 164. They also contend that, despite becoming aware of the attack on or about August 10, 2021, ReproSource unreasonably delayed notifying them. *Id.* ¶¶ 31-32. ReproSource denies these allegations.

**b. Class Counsel Performed High-Quality Work for the Benefit of the Class**

The Settlement reached is the result of intensive negotiations between the parties, multiple rounds of discussions with an experienced mediator, as well as settlement negotiations via telephone and email. Migliaccio Decl., ¶ 24.

Plaintiff Bickham filed the initial complaint in this Court on November 19, 2021. [ECF No. 1] Defendant filed a motion to dismiss on January 31, 2022. [ECF No. 6] On February 21, 2022, Plaintiffs Bickham and Bailey filed the First Amended Complaint. [ECF No. 11] On March 21, 2022, Defendant filed its motion to dismiss the Complaint [ECF. No. 14]—which Plaintiffs opposed on April 4, 2022. [ECF No. 23] On May 3, 2023, the Court consolidated *Gordon v. ReproSource Fertility Services, Inc*. 22-cv 10766-GAO with Plaintiffs Bickham and Bailey's action. [ECF No. 48].

To facilitate negotiations, the Parties selected Judge Wayne Andersen (ret.), formerly of the U.S. District Cout for the Northern District of Illinois, a prominent mediator with significant experience handling data breach and privacy mediations. Migliaccio Decl., ¶ 22. Prior to and throughout the mediation process, ReproSource produced information relevant to the Data Breach and potential resolution. *Id*., ¶23. The Parties also submitted detailed mediation statements. *Id*. On July 13, 2023, the Parties participated in a full day mediation with Judge Andersen. *Id.* ¶ 24. The Parties were unable to reach a resolution at the mediation, but discussions between the Parties continued, with assistance from Judge Andersen. Following these continued discussions, Judge Andersen made a mediator's proposal that was ultimately accepted by both Parties on August 8, 2023. *Id.* ¶ 24. The Parties then negotiated the details and language of the Settlement Agreement and its exhibits and executed the Settlement Agreement on January 10, 2023. *Id.*, ¶ 26.

Thereafter, the Parties prepared, exchanged drafts of, and negotiated the content and language of the Settlement Agreement and related Settlement documents, including the various forms of notice and proposed orders. *Id*., ¶ 25. Ultimately, the Parties worked out the specifics and language of the documentation and entered into and executed the Settlement Agreement on January 10, 2024. *Id*., ¶ 26.

On January 10, 2024, the Plaintiffs filed the Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") [Dkt. No. 62], and on February 15, 2024, the Court entered the Preliminary Approval Order.

The pre-mediation discovery produced by ReproSource included, among other things, information about the scope of the Data Breach and the Settlement Class size and composition, and the nature of the information compromised in the breach, allowing Class Counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case and to effectively conduct settlement negotiations. Class Counsel spent substantial time reviewing the information and documents produced, initially to assess the potential damages and then to assess the reasonableness of the proposed settlement. Migliaccio Decl., ¶ 23.

**c. The Terms of the Settlement**

After nearly two years of litigation and at least a month of hard-fought negotiations, the Parties reached an agreement that resolves the litigation and provides substantial relief to the Settlement Class. The Parties negotiated the Settlement Agreement, providing for a $1,250,000 non-revisionary settlement fund (the "Settlement Fund"), as well as for Administrative Expenses, Notice, Costs, and attorneys' fees and Service Awards, to be paid out of the Settlement Fund. S.A. § 3.1.

Settlement Class members benefit directly from the Settlement Agreement in many ways, as they may submit a claim for one of the following: (a) up to $3,000 in Documented Loss Payment as well as three years of Credit Monitoring and Insurance Services ("CMIS"); or (b) an Alternative Cash Payment of $50. S.A. § 3.3.[3] Importantly, the Settlement Fund is non-reversionary—no funds will revert back to ReproSource. The Settlement Agreement also reflects the fact that ReproSource has implemented several measures designed to improve its data security practices. *Id.*, § 2.1.

Settlement Class members' valid and timely claims will be paid on a *pro rata* basis from the Net Settlement Fund (*i.e.*, the Settlement Fund, less any amounts paid for notice and administrative expenses, attorneys' fees and expense reimbursement, and the class representative service awards). *Id.*, ¶¶ 1.26, 3.15. Settlement Class members have until June 19, 2024, to submit claims. Preliminary Approval Order, ¶ 19.

### **D. Class Counsel's Fee Request**

Class Counsel seek a total award of attorneys' fees in the amount of one-third of the Settlement Fund, or $416,666.67, plus reimbursement of litigation costs and expenses in the amount of $ 16,229.31. Class Counsel's fee request, about which Defendant takes no position,[4] is reasonable based on the concrete benefits achieved for the Class and applicable legal principles, as set forth below.

## III. CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

It is well-settled that attorneys who have achieved a benefit for class members are entitled to compensation for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see*

[3] California residents will be entitled to an additional $50.00 payment.
[4] S.A., ¶ 9.1.

*also In re Fidelity/Micron Sec. Litig*., 167 F.3d 735, 737 (1st Cir. 1999) ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."). Fed. R. Civ. P. 23(h) expressly authorizes a court to award, in its discretion, "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

The First Circuit utilizes two methods for calculating attorneys' fees in the context of class action litigation: the "lodestar" method and the "percentage of fund" or "POF" method. *See Roberts v. TJX Cos.,* Civil Action No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *30 (D. Mass. Sep. 30, 2016); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)). "Although the First Circuit has declared that the district court has a choice as to whether to use the POF or lodestar approach, a majority of courts in this circuit rely heavily on the POF calculation in determining the reasonableness of fee awards." *See In re Lupron Mktg. & Sales Practices Litig*., 2005 U.S. Dist. LEXIS 17456, at *3-5 (D. Mass. Aug. 17, 2005) (collecting authority); *see also Duhaime v. John Hancock Mut. Life Ins. Co*., 989 F. Supp. 375, 377 (D. Mass. 1997) (POF method more aligns with interests of the class); *In re Thirteen Appeals*, 56 F.3d at 307 ("Our decision is driven both by our recognition that use of the POF method in common fund cases is the prevailing praxis and by the distinct advantages that the POF method can bring to bear in such cases."); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) ("The First Circuit and several district courts in this circuit have approved the use of the percentage of fund method in common fund cases where a pool of money is to be divided among the class members."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007)(Awarding reasonable attorneys' fees

from a "common fund" "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and to distribute the litigation costs "proportionately among those benefitted by the suit.").

Where the court employs a POF analysis, a lodestar cross-check may be appropriate to confirm the reasonableness of the POF award. *See In re Thirteen Appeals*, 56 F.3d at 307; *see also New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-11148, 2009 U.S. Dist. LEXIS 97364, at *1 (D. Mass. 2009) (determining that lodestar is enough of a cross-check on the POF method; a full audit of all attorneys' fees and costs was too cumbersome and time-consuming). Accordingly, the Court should apply the POF method and a lodestar cross-check here.

## IV. FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Although the First Circuit has not explicitly adopted a set of factors to be used in determining whether the percentage of the common fund requested as attorneys' fees is reasonable, courts within this Circuit have considered the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *3. Courts have also considered the reaction of the named plaintiff and the class. *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 473 (D.P.R. 2011). In addition, although "[t]he First Circuit does not require a court to engage in calculating the

lodestar method when awarding fees based upon the percentage of the fund method," courts within this Circuit have performed lodestar cross-checks "to ensure[] that fees awarded under the percentage of the fund method are reasonable in light of the amount of work counsel actually performed." *Id.* at 464−65.

**a. The Size of the Fund and the Number of Persons Benefitted**

Typically, the most important factor in determining a reasonable percentage of the fund is the size of the fund created. Manual for Complex Litigation § 14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)) ("Generally, the factor given the greatest emphasis is the size of the fund created, because a 'common fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded.'") (alterations in original); *see also In re Puerto Rican Cabotage Antitrust Litig*., 815 F. Supp. at 458 ("Analyzing the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award.").

Here, the non-reversionary Settlement Fund of $1,250,000.00 constitutes a substantial settlement. The Settlement Agreement also offers significant flexibility to Settlement Class member claimants so as to maximize benefits. Settlement Class members may choose from one of the following: (a) up to $3,000 in Documented Loss Payment as well as three years of CMIS (*see* S.A. §§ 3.3, (a,e)); or (b) an Alternative Cash Payment of $50 (*id.* § 3.3(f)).[5] The Settlement Agreement provides Settlement Class members with significant relief in relation to the harm they suffered. Accordingly, this factor supports approval of the requested fee amount. The proposed Settlement amounts to $5.49 per Class member, which compares favorably with other data breach

[5] California residents will be entitled to an additional $50.00 payment.

settlements in this District and elsewhere. *See*, *e.g.*, *In re: CaptureRX Data Breach Litigation*, No. 5:21-cv-00523 (W.D. Tex.) (creating a fund of $4,750,000 for approximately 2,420,141 class members ($1.98 per class member)); *In re: 21st Century Oncology Customer Data Security Breach Litigation*, No. 8:16-md-2737 (M.D. Fla.) (creating a settlement fund of $7,850,000 for approximately 2,200,000 class members ($3.56 per class member)); *Hestrup v. DuPage Medical Group, Ltd.*, No. 202 IL 937 (DuPage Cty., Ill.) (making available a fund of $3,000,000 for a class of approximately 655,000 persons ($4.58 per class member)); *In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016) (roughly $0.51 each for 40 million class members).

**b. The Skill, Experience, and Efficiency of the Attorneys Involved**

Class Counsel have significant experience in class action litigation, including data breach litigation, and have negotiated many other substantial class action settlements throughout the country. Migliaccio Decl., ¶¶ 2,31; Declaration of David Pastor ("Pastor Decl."), ¶¶ 10–11.

Although Class Counsel are highly skilled and have substantial experience in this area, this litigation had numerous risks, including the ability to certify the Class. Nonetheless, Class Counsel deployed their substantial experience and achieved a favorable result for the Class. Thus, the requested fee amount is appropriate.

**c. The Complexity and Duration of the Litigation**

The requested fee is further supported by Class Counsel's diligent litigation of this action for more than two years on behalf of a large consumer Class. "Class actions are . . . by their nature more complex than individual actions." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 81 n.22 (D. Mass. 2005) (internal citation omitted). Here, Class Counsel successfully navigated

these complex issues and achieved a favorable result for Plaintiff and the Class. Accordingly, the requested fee is reasonable.

**d. The Risks of the Litigation**

Class Counsel undertook a significant risk in litigating this matter without any guarantee of compensation for the more than 600 hours of work expended to date. *See Hill v. State St. Corp.,* 2014 U.S. Dist. LEXIS 179702, at *46 (D. Mass. Nov. 26, 2014) ("Plaintiffs' Counsel litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class. The court considers this contingency risk in awarding attorneys' fees."); *In re Lupron,* 2005 U.S. Dist. LEXIS at *15 ("Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award.") (internal citation omitted). The risks and uncertainties that are inherent in any litigation are more pronounced in data breach litigation. Due to the rapidly evolving law surrounding data breach cases, they generally face more substantial hurdles in litigation. *See*, *e.g*., *In re Hannaford Bros. Customer Data Sec. Breach Litig*. 293 F.R.D. 21, 35 (D. Me. 2013) (denying class certification in cybersecurity incident class action litigation). Because data breach litigation is a rapidly evolving field, there is even more unpredictability as to the ultimate result than in other types of litigation. *See Gordon v. Chipotle Mexican Grill, Inc*., 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex").

While the outcome here was successful, recovery at the outset of the case was far from assured. Defendant would, no doubt, vigorously contest class certification. Even if a class were certified, Defendant would certainly contest the underlying claims at summary judgment and, if unsuccessful in obtaining the desired summary judgment, at trial. Moreover, if Plaintiffs

successfully navigated these obstacles and obtained a favorable decision at trial, Plaintiffs would be virtually certain to further face the substantial delay and risk of adverse rulings on appeal. Although Plaintiffs believe that they have strong positions on these issues and that their case has merit, litigation such as this is inherently risky, and there is always a possibility that Plaintiffs would not prevail and that they and the Class would be left with no recovery. In spite of these uncertainties, Class Counsel litigated this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of any compensation.[6] Accordingly, the risk factor strongly supports the reasonableness of the requested fee.

**e. The Amount of Time Devoted to the Case by Counsel**

This litigation has been handled in an efficient, streamlined manner by Class Counsel. As is demonstrated in the Migliaccio Decl. and the Pastor Decl., Class Counsel expended significant effort in bringing about this Settlement on behalf of the Class. Defendant's skilled attorneys mounted a strong defense at every stage, first in the litigation context, and then in the mediation session (including pre-mediation discovery) and weeks of follow-up negotiations. In addition, the Settlement Agreement and supporting documents took substantial additional time to negotiate and finalize. Migliaccio Decl., ¶¶ 24–26.

The more than 600 hours Class Counsel expended in litigating this matter include the following:

- **Pre-Complaint Factual Investigation.** Class Counsel conducted a factual and legal investigation of the data breach, including the scope of the breach and potential injuries to class members, in order to determine the viability of a cause of action against ReproSource. This included working with class members, including Plaintiffs and gathering factual background information concerning the breach.

[6] This significant risk is magnified here because the Class Counsel firms are not large firms.

- **Pre/Post-Complaint Legal Investigation.** Class Counsel also researched and analyzed the potential statutory and common law claims and the elements and potential defenses for each claim and prepared the complaint.

- **Motion to Dismiss.** Class Counsel reviewed, analyzed and researched Defendant's Motion to Dismiss, prepared their opposition papers and conducted additional research. After the motion was fully briefed, Class Counsel reviewed and submitted additional relevant authorities discovered after the completion of briefing and submitted those cases as supplemental authority on the Motion to Dismiss.

- **Settlement.** The Parties began discussing the possibility of settlement, including numerous telephone and email communications. The Parties then agreed on mediation and began the process of selecting an appropriate mediator. The Parties participated in a full day mediation session on July 13, 2023 with the Honorable Wayne Andersen. In connection with the mediation sessions, the Parties submitted detailed mediation briefs setting forth their respective views on the strengths of their case and provided substantial pre-mediation discovery. The discovery produced by ReproSource included information about the scope of the Data Breach and the Settlement Class size, allowing Class Counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case and to effectively conduct settlement negotiations. Though the case did not settle at the mediation, the Parties continued discussions on settlement, with the assistance of Judge Andersen. On August 8, 2023, the Parties reached an agreement in principle to settle the case, after Judge Andersen made a mediator's proposal, which both parties accepted. The Settlement Agreement and related documents then took substantial additional time and effort to negotiate and finalize. Class Counsel then worked with Defendant and the Claims Administrator to effectuate Notice and, subsequently, worked with Settlement Class members to assist in the submission of claims.

Migliaccio Decl., ¶¶ 15-24.

The substantial time and effort Class Counsel spent vigorously litigating this action was critical in achieving this favorable result, and further supports the reasonableness of the requested fee. Class Counsel will also incur additional time and expenses related to preparing the final approval papers, preparing for and conducting the Final Approval hearing, and in responding to Settlement Class member inquiries regarding distribution of the Settlement fund. The Migliaccio Decl., the Pastor Decl., the Declaration of Michael Kind ("Kind Decl."), and Declaration of George Haines ("Haines Decl."), describe the efforts and list the hours each firm

expended in the prosecution of this litigation. The substantial time and effort Class Counsel spent vigorously litigating this action were critical in achieving this favorable result, and further support the reasonableness of the requested fee.

**f. Awards in Similar Cases**

"Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in this Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Mass. Mut. Life Ins. Co.*, Civil Action No. 12-11280-DJC, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017). Courts in this Circuit have repeatedly granted fee requests in the amount of one-third of the Settlement Fund, the same percentage sought by Plaintiffs here. *See*, *e.g.*, *In re Intuniv Antitrust Litig.,* 2020 U.S. Dist. LEXIS 247615, at *12-13 (D. Mass. Dec. 9, 2020) (awarding fee of 33⅓%); *Vuckovich v. KT Health*, No. 15-13696-GAO (June 6, 2018) (awarding fee of one-third of $1,750,000 settlement);[7] *Phillips v. Equity Residential, L.L.P.*, No. 13-12092-RWZ (May 3, 2018) (awarding fee of one-third of $908,000 fund);[8] *Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 195147, at *3 (D. Mass. Nov. 28, 2017) (awarding one-third of $2.9 million Settlement Fund); *In re Celexa and Lexapro Mktg. and Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 125041, at *23–24 ((D. Mass. Sept. 8, 2014) (awarding fees of up to 37% of fund, depending on dollar amount of claims paid); *Woolfson v. Caregroup Inc.*, 2010 U.S. Dist. LEXIS 145990, at *7 (D. Mass. Sept. 13, 2010) (awarding 33% of the settlement fund); *In re Stocker Yale, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007) (awarding 33% of $3.4 million Settlement Fund); *In re Relafen*, 231 F.R.D. at 82 (awarding one-third of settlement fund); *Malanka v. de Castro*, 1990 U.S. Dist. LEXIS 18171, at *3 (D. Mass. Nov. 20, 1990) (same).

---

[7] A copy of the final order in *Vuckovich* is annexed hereto as **Exhibit A.**
[8] A copy of the final order in *Phillips* is annexed hereto as **Exhibit B.**

**g. Public Policy Considerations**

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 463; s*ee In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007) ("[w]ithout a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent").

Here, Class Counsel achieved a favorable result for patients who had their sensitive personal information accessed by hackers—including the ability to obtain protection in the form of credit monitoring. Accordingly, public policy considerations support the requested fee to reward Class Counsel.

**h. The Reaction of the Class**

The requested fee is supported by the reaction of the Class, which is entirely positive. To date, with 6,189 claims submitted, there have been no objections to the Settlement or the requested fees and expenses, and only two Settlement Class members have opted out of the Settlement.

**i. The Lodestar Cross-Check Supports the Reasonableness of The Requested Fee.**

"In the First Circuit as elsewhere, '[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required.'" *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at 21 (quoting in part *In re Thirteen Appeals*, 56 F.3d at 307). When, as is appropriate here, the lodestar method is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of

the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco*, 535 F. Supp. 2d at 270.

Here, Class Counsel collectively spent a total of 600 hours prosecuting this action since its inception. Relying on past experience, Class Counsel know that they will spend substantial additional time, and incur additional expenses, related to the Final Approval Hearing and post-settlement work. Based on Class Counsel's current rates, their collective lodestar is $400,295.42. Migliaccio Decl., ¶ 29; Pastor Decl., ¶ 5; Kind Decl., ¶ 4; and Haines Decl., ¶ 4. The requested one-third fee, which amounts to $416,666.67, therefore represents a multiplier of 1.04 on Class Counsel's lodestar—which obviously does not account for additional time that Class Counsel will expend overseeing the Settlement. Courts in the First Circuit routinely approve fees with higher lodestar multipliers. *See, e.g., In re VW & Audi Warranty Extension Litig*., 89 F. Supp. 3d 155, 171 (D. Mass. 2015) (multiplier of 2); *In re Neurontin Mktg. & Sales Pracs. Litig*., 58 F. Supp. 3d 167, 172 (D. Mass 2014) (multiplier of 3.32); *In re Relafen,* 231 F.R.D. at 81 (2.02 multiplier); *In re TJX Cos. Retail Sec. Breach Litig*., 584 F. Supp. 2d 395, 408 (D. Mass. 2008) (1.97 multiplier); *In re Tyco*, 535 F. Supp. 2d at 271 (2.697 multiplier). In view of the prevailing standards and the prevailing practice in the First Circuit, as well as application of the foregoing factors, the 1.04 multiplier sought here is clearly reasonable, as is the requested fee. *See* 5 Newberg on Class Actions § 15:87 (5th ed. 2017) ("Empirical evidence of multipliers across many cases demonstrates that most multipliers are in the relatively modest 1-2 range.").

Class Counsel's rates are clearly reasonable under prevailing standards. These rates have been approved by courts in this District and elsewhere. *See* Migliaccio Decl., ¶ 30; Pastor Decl., ¶ 7. Moreover, Class Counsel's hourly rates are consistent with rates charged by firms in this

area for similar work by attorneys of comparable experience,[9] and they are also consistent with average billing rates in the Boston area.[10] *See e.g. In re: Columbia Gas Cases*, No. 1877CV01343-G AT 24 (Mass. Super. Ct., Mar. 12, 2020) (attached as **Exhibit C**) ("[T]he court finds the blended hourly rate of $650 to be reasonable and in keeping with the fees charged in the greater-Boston area for attorneys, both partners and associates" and that "the hourly rates of the attorneys in this litigation, ranging from $350 to $420 for associates and $550 to $900 for partners are will within the accepted range"); *Chambers v. Tufts Associated Health Maintenance Organization*, Inc., No. 2084CV2837 at 5 (Mass. Super. Ct. Sept. 20, 2022) (attached as **Exhibit D**) (finding hourly rates of $750 for partners and $400 for associates to be appropriate). Accordingly, the appropriateness of the requested fee is supported under the lodestar method as well.

## V. CLASS COUNSEL SHOULD BE REIMBURSED FOR REASONABLE LITIGATION EXPENSES

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill*, U.S. Dist. LEXIS 179702, at *53. In the prosecution of this litigation, Class Counsel have advanced litigation costs and expenses in the amount of $16,229.31. These costs and expenses are supported by Class Counsel's declarations, and Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain this Settlement. *See* Migliaccio Decl. ¶ 34; Pastor Decl., ¶ 8.

## VI. THE PROPOSED SERVICE AWARD SHOULD BE APPROVED

[9] *See Stratos v. Dep't. of Public Welfare*, 387 Mass. 312, 323 (1982) ("[c]alculation of reasonable rates should begin with the average rates in the attorney's community for similar work by attorneys of the same years' experience").
[10] Migliaccio & Rathod LLP's blended rate was $503.90; Freedom Law's blended rate of $550.00; Kind Law's blended rate was $644.18. Migliaccio Decl. ¶ 29; Haines Decl. ¶ 4; Kind Decl., ¶ 4. Meanwhile the hourly rate for David Pastor was $725.00. Pastor Decl. ¶ 5.

The Settlement Agreement provides that Class Counsel intend to seek an incentive award for Plaintiffs in the amount of $2,500 each, and Defendant agreed not to take any position with respect to the application. S.A., ¶ 9.1. "Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *5 (quoting *Scovil v. FedEx Ground Package Sys.*, No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *22 (D. Me. Mar. 14, 2014)). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 468 (quoting *In re Lupron*, No. 2005 U.S. Dist. LEXIS 17456, at *25). Plaintiffs respectfully request that this Court, in recognition of their time and effort on behalf of the Settlement Class, approve a service award in the amount of $2,500 to each of Jasmyn Bickham, Amanda Bailey, and Lisa Gordon.

## VII. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court, in the Preliminary Approval Order, preliminarily certified the Class for settlement purposes, finding that it satisfied the elements for class certification, and appointed Plaintiffs and Plaintiffs' counsel as Class Representative and Class Counsel, respectively. *See* Preliminary Approval Order, ECF No. 71 at ¶¶ 4-7. Nothing has occurred since the entry of the Preliminary Approval Order that should alter these findings, and accordingly, the Class should be finally certified for settlement purposes, and the appointment of Plaintiffs and counsel as Class Representatives and Class Counsel should be confirmed.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs submit that the requested attorney fees, expenses, and service awards are fair, reasonable, and appropriate.

May 6, 2024

Respectfully submitted,

*/s/ David Pastor*
David Pastor (BBO #391000)
**PASTOR LAW OFFICE PC**
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
T: (617) 742-9700
dpastor@pastorlawoffice.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H. St. NE, Suite 302
Washington, DC 20002
T: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
mpatronella@classlawdc.com

George Haines
Geraldo Avalos
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
T: (702) 880-5554
ghaines@freedomlegalteam.com
gavalos@freedomlegalteam.com

Michael Kind
**KIND LAW**
8860 S. Maryland Pkwy, Suite 106
Las Vegas, NY 89123
T: (702) 337-2322
mk@kindlaw.com

*Settlement Class Counsel*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 6, 2024.

*/s/ David Pastor*
David Pastor